IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02553-PAB-MEH

WILLIAM MONTGOMERY,

    Plaintiff,

v.

TREVOR LORE,

    Defendant.

___

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
___

**Michael E. Hegarty, United States Magistrate Judge**.

    Before the Court is Defendant's Motion to Dismiss ("Motion"). ECF 17. Plaintiff William Montgomery ("Plaintiff") brings this lawsuit against Defendant Travis Lore ("Defendant"), a police officer for the City of Aurora, Colorado, pursuant to 42 U.S.C. § 1983 for violations of his Fourth Amendment constitutional rights. Defendant moves for dismissal on the basis of qualified immunity. The Motion is fully briefed, and the Court finds that oral argument will not materially assist in its adjudication. The Court respectfully recommends that the Motion be granted.

## BACKGROUND

    For the purposes of this ruling, the Court accepts as true the factual allegations—as opposed to any legal conclusions, bare assertions, or conclusory allegations—that Plaintiff raises in his Complaint. *See generally Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (accepting as true a plaintiff's factual allegations for purposes of Fed. R. Civ. P. 12(b)(6) analysis).

    Plaintiff alleges that on September 17, 2019, at approximately 8:36 p.m., he entered a Walmart Super Store to go shopping. ECF 1 at ¶ 5. Plaintiff purchased some wipe packages,

forgoing the store-provided plastic bags for "environmental reasons." *Id*. at ¶ 6. At approximately 9:02 p.m., Plaintiff began to leave the store, carrying the packages in hand. *Id*. at ¶ 7. Plaintiff claims he was followed out by Defendant, who was "posted up" at the store's exit. *Id*.

Eventually, Defendant caught up to Plaintiff at Plaintiff's car. *Id*. at ¶ 8. There, Defendant asked to see Plaintiff's receipt. *Id*. Plaintiff declined and stuffed the wipe packages into his jacket inside pockets. *Id*. Defendant made additional requests to see Plaintiff's receipt and then asked for Plaintiff's identification. *Id*. at ¶ 9. Plaintiff asked if he was being detained, to which Defendant responded in the affirmative. *Id*. Defendant then told Plaintiff to sit down on the ground. *Id*. Moments later, Defendant asked Plaintiff to stand, and he escorted Plaintiff back into the store for further investigation. *Id*. At the store, Plaintiff provided his identification to Defendant. *Id*.

Defendant then patted down Plaintiff, after which Plaintiff asked Defendant if he thought he was armed. *Id*. at ¶ 10. One of Plaintiff's pant pockets contained two RV body lights, which he previously purchased before entering the store earlier that night. *Id*. at ¶ 11. Purportedly, Defendant acknowledged the lights as "not being weapons." *Id*. Defendant then asked Plaintiff if he had stolen these in addition to the wipe packages. *Id*. Plaintiff did not respond, and Defendant allegedly reached into his jacket pockets to retrieve the wipe packages. *Id*. at ¶ 12. Shortly thereafter, two more officers arrived at the store to assist Defendant. *Id*. at ¶ 13. Defendant asked Plaintiff to sit down once more, and these two officers stood by waiting with Plaintiff. *Id*. Defendant left Plaintiff with these officers to "wait next to his vehicle for the store employees to continue their investigation into the matter." *Id*.

About fifteen minutes later, Defendant returned to where the officers and Plaintiff were. *Id*. at ¶ 14. Defendant told Plaintiff he would be issuing him a shoplifting citation. *Id*. Plaintiff asked if he was also being cited for the RV lights. *Id*. As alleged, Defendant then reached into Plaintiff's

2

pant pockets to retrieve the lights. *Id*. Defendant told Plaintiff that "he'd be holding onto them while he started a new investigation with the store." *Id*.

After another fifteen minutes, Defendant came back and informed Plaintiff that he would be citing him for shoplifting the RV lights as well. *Id*. at ¶ 15. Plaintiff continued to refuse to show any receipt. *Id*. A few more minutes elapsed, and Defendant released Plaintiff but did not return the wipe packages or lights. *Id*. at ¶ 16. The next day, Plaintiff and Defendant spoke via phone, and Plaintiff was told that all theft charges against him from this incident would be dropped. *Id*. at ¶ 17. Plaintiff was instructed to pick up his items from the police department's evidence room. *Id*.

## LEGAL STANDARDS

### I. Fed. R. Civ. P. 12(b)(6)

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. *Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id*. at 679. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (quoting *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011)). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id*. (quotation marks and citation omitted).

**II.     Treatment of a Pro Se Plaintiff's Complaint**

A pro se plaintiff's "pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Garrett v. Selby Connor Maddux & Janer*,

425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). "Th[e] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Smith v. U.S.*, 561 F.3d 1090, 1096 (10th Cir. 2009) (quoting *Whitney v. N.M.*, 113 F.3d 1170, 1173-74 (10th Cir. 1997)). The Tenth Circuit interpreted this rule to mean, if a court "can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, [it] should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Diversey v. Schmidly*, 738 F.3d 1196, 1199 (10th Cir. 2013) (quoting *Hall*, 935 F.2d at 1110). However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Garrett*, 425 F.3d at 840 (quoting *Hall*, 935 F.2d at 1110).

## ANALYSIS

The Complaint asserts five claims for relief: (1) unreasonable relocation (seizure) of person, (2) unreasonable search, (3) unreasonable seizure of the wipe packages, (4) unreasonable seizure of the RV lights, and (5) unreasonable detention (following the seizure of the RV lights). ECF 1 at 9-14. Plaintiff maintains Defendant did not possess reasonable suspicion, in violation of the Fourth Amendment. *Id.* Defendant argues for dismissal of all claims on the grounds of qualified immunity, as Plaintiff fails to cite to clearly established law and cannot show that Defendant did not have reasonable suspicion. ECF 17.

### I.     Qualified Immunity

The doctrine of qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important

interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Because qualified immunity is an immunity from suit, rather than a mere defense to liability, it is effectively lost if a case is erroneously permitted to go to trial. *Id*. at 231; *Ahmad v. Furlong*, 435 F.3d 1196, 1198 (10th Cir. 2006) ("The privilege is an immunity from suit rather than a mere defense to liability."). The "driving force behind creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials will be resolved prior to discovery." *Pearson*, 555 U.S. at 231-32 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 n.2 (1987)). Accordingly, qualified immunity questions must be resolved at the earliest possible stage in litigation." *Id*. at 232.

When a defendant asserts qualified immunity, the plaintiff has a two-fold burden to overcome the asserted immunity: "First, a court must decide whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right. . . Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was clearly established at the time of the defendant's alleged misconduct." *Pearson*, 555 U.S. at 232 (quoting *Saucier v. Katz*, 533 U.S. 194 (2001) (internal citations and quotation marks removed)). *See also Cox v. Glanz*, 800 F.3d 1231, 1245 (10th Cir. 2015) (stating that plaintiffs must (1) "rebut the [defendant's] no-constitutional-rights arguments"; and (2) "demonstrate that any constitutional violation was grounded in then-extant clearly established law.") (citing *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009)); *see also Felders v. Malcom*, 755 F.3d 870, 877-78 (10th Cir. 2014) ("[T]he 'record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendants are entitled to qualified immunity.'" (quoting *Medina v. Cram*,

6

252 F.3d 1124, 1128 (10th Cir. 2001))). The Supreme Court has afforded courts the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 232.

An official's conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of [a] right [are] sufficiently clear" that every "reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). To satisfy the clearly established prong of the test, the Tenth Circuit requires that "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010); *see also Doe v. Woodard*, 912 F.3d 1278, 1289 (10th Cir.), *cert. denied sub nom.*, *I.B. v. Woodard*, 139 S. Ct. 2616 (2019); *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015). The Supreme Court has emphasized that the clearly established law may not be defined at "a high level of generality." *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019). The Court stressed that factual "[s]pecificity is especially important in the Fourth Amendment context[.]" *Id*. These analogous situations allow "an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts." *Id*. Therefore, Plaintiff must identify clearly established law that put Defendant on notice that his conduct violated Plaintiff's rights in the situation he confronted.

a)      *Unreasonable Seizure of Person (Claim One)*

Plaintiff's first claim alleges an unreasonable relocation (seizure) of his person because Defendant had "nothing more than 'unfounded naked suspicion'" that Plaintiff stole items. ECF 26 at 3-4. To support this claim, Plaintiff cites to *Walmart Stores, Inc. v. Odem*, 929 S.W.2d 513 (Tex. App. 1996). In *Odem*, the defendant store greeter grabbed the plaintiff by the arm, reached

7

into the plaintiff's purse, and retrieved a blue package thought to be unpaid merchandise. *Odem*, 929 S.W.2d at 518. That court found that the defendant was not entitled to the shopkeeper's privilege because there was no reasonable basis to believe that the plaintiff had stolen items from the store. *Id*. at 520.[1]

Here, Defendant, a police officer, witnessed Plaintiff walk out of the store with unbagged items, stuff them into his pockets once approached by Defendant, and refuse to produce a receipt when asked. ECF 1 at ¶¶ 7-9. There are no allegations of physical contact, save for Defendant taking Plaintiff's items after he repeatedly refused to produce a receipt. *Id*. at ¶ 12, 14. *Odem* and the present case are materially different, failing to show that Plaintiff was subject to a sufficiently similar violation. However, even if *Odem* was sufficiently similar, it is not a Supreme Court or Tenth Circuit decision. *Woodard*, 912 F.3d at 1289. "'[E]xisting precedent must have placed the statutory or constitutional question beyond debate' for a right to be clearly established." *Id*. (quoting *Est. of Lockett by & Through Lockett v. Fallin*, 841 F.3d 1098, 1107 (10th Cir. 2016)). Though there "need not be a case precisely on point," there must at least be a case cited demonstrating that the law was clearly established. *Redmond v. Crowther*, 882 F.3d 927, 935 (10th Cir. 2018).

In his Response, Plaintiff also cites to *Huynh v. Walmart Inc*., 30 F.4th 448 (5th Cir. 2022) to argue a lack of reasonable suspicion to seize him. ECF 26 at 7. Again, Plaintiff cites to a case that presents facts considerably different than those at issue in this case. In *Huynh*, one plaintiff began to "punch[], kick[], and bit[e]" one of the defendants, who had grabbed the other plaintiff's purse in attempt to stop her. *Huynh*, 30 F.4th at 452. Eventually, an off-duty officer (the third

---

[1] Shopkeeper's privilege is a right expressly given to both store employees and police officers to detain someone for suspected shoplifting. Colo. Rev. Stat. § 18-4-407 (2016).

8

defendant) intervened to protect the other two defendants. *Id*. That court never addressed whether the defendant officer was "acting in an official capacity or as an employee," because it was not relevant to the case. *Id*. at 455. In fact, as that court explained:

> [w]hile [plaintiffs] focus their argument on the notion that [the defendant officer] acted to apprehend shoplifters, their reasoning misses the point. They may be correct that [the defendant officer] could not have had a reasonable suspicion that plaintiffs were attempting to steal Walmart merchandise. . . [The] evidence plainly establishes that [the defendant officer] intervened not to thwart shoplifting, but rather to protect [one of the other defendants], whom [the defendant officer] observed being hit, kicked, spat upon—and bitten—by [plaintiffs].

*Id*.

In this case, Plaintiff was never apprehended due to a physical altercation. Nor was he stopped by store employees for suspected shoplifting. He was followed then stopped by Defendant, a police officer, for leaving the store with unbagged items. ECF 1 at ¶¶ 7-8. Defendant moved Plaintiff into a well-lit area, so the investigative stop did not take place in the dark parking lot. *Id*. at ¶ 9. There is little commonality between the facts of these two cases, with the exception that both occurred near or in a Walmart store, and that there was a stop involved. Aside from *Huynh* being considerably different than the present case, *Huynh* also was not a decision from the Supreme Court or the Tenth Circuit. It cannot be a predicate decision for finding established law at the time of the events. Plaintiff has not provided any citation to any material case to demonstrate that police officers lack reasonable suspicion to stop individuals leaving stores with unbagged items and no visible receipt.

The Court is mindful of the Tenth Circuit's admonition that a plaintiff bears the burden of citing to clearly established law. *See Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010). The cases following this requirement typically involve plaintiffs who are represented by counsel. *See, e.g.*, *Gutierrez v. Cobos*, 841 F.3d 895, 903 (10th Cir. 2016); *Rojas v. Anderson*, 727 F.3d

9

1000, 1005-06 (10th Cir. 2013); *Smith v. McCord*, 707 F.3d 1161-62 (10th Cir. 2013). However, the Tenth Circuit has reversed a trial court's dismissal of a pro se plaintiff's excessive force claim—where the trial court found the plaintiff had failed to identify a case demonstrating his right was clearly established—by itself pointing to a Supreme Court case sufficiently like the facts alleged and finding the plaintiff's right was clearly established. *See Ali v. Duboise*, 763 F. App'x 645, 651-52 (10th Cir. 2019). Therefore, the Court has conducted an additional inquiry to determine whether the relevant law was clearly established as of the dates of these events, finding no authority concluding that an officer who observes an individual exiting a store with unbagged merchandise and no visible receipt, accompanied by a direct refusal to produce a receipt, does not have reasonable suspicion to conduct an investigative detention for possible shoplifting and seize the merchandise until a receipt is produced. Accordingly, Defendant should be entitled to qualified immunity on the first claim.

b)     *Unreasonable Seizure of Items (Claims Three and Four)*

Plaintiff's third and fourth claims allege unreasonable seizure of the wipe packages and the RV lights. In his Response, Plaintiff cites to *Banks v. Food Town*, 98 So. 2d 719 (La. Ct. App. 1957) in an attempt to show there was clearly established law. ECF 26 at 5. In *Banks*, the plaintiff was accosted by the employee defendant for allegedly hiding something under his shirt. That plaintiff never purchased anything and walked out of that store with empty hands. There were no facts present at the time of the incident which would give rise to a reasonable suspicion of shoplifting. Here though, Plaintiff exited the store with unbagged items. He shoved the items into his pockets when asked about the receipt for them. He then refused to produce a receipt. The facts of this case are significantly different than those in *Banks*, nor did *Banks* concern the seizure of

one's items. Moreover, *Banks* is a Louisiana state court case, and, again, cannot be used to demonstrate clearly established law.[2]

Even if Plaintiff had pointed to clearly established law, Defendant maintains that there was reasonable suspicion to seize the items. ECF 17 at ¶¶ 10-11 (explaining that there was reasonable suspicion for both the pat-down search and item seizure under the totality of the circumstances). The seizure of property does not rely on an independent justification from the detention of Plaintiff's person. "If, while conducting a legitimate *Terry* search . . . the officer should . . . discover contraband other than weapons, he clearly cannot be required to ignore the contraband." *Michigan v. Long*, 463 U.S. 1032, 1050 (1983). The seizure of Plaintiff's items was, in large part, due to his refusal to produce a receipt for unbagged items that he stuffed in his pockets. Defendant, believing that Plaintiff had committed shoplifting, removed both the wipe packages and RV lights from Plaintiff's person. The Court finds that Defendant had reasonable suspicion to remove both items from Plaintiff's person, and therefore should enjoy qualified immunity.

c)      <u>Unreasonable Detention (Claim Five)</u>

Plaintiff claims he was unreasonably detained following the seizure of the RV lights, as that detention "was a clear 'fruit of the poisonous tree' violation." ECF 26 at 8. Fourth Amendment detentions require reasonable suspicion. *Romero v. Story*, 672 F.3d 880, 886 (10th Cir. 2012). "An officer who 'stops' and briefly detains a person for questioning 'must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *Davis*, 94 F.3d at 1468 (citing *Terry*, 392 U.S. at 21). "[R]easonable suspicion may exist 'even if it is more likely than not that the individual is not involved in any

---

[2] The Court has conducted an inquiry to find clearly established law on this issue as well. It has not found that any relevant law was clearly established as of the dates of these events.

illegality.'" *U.S. v. McHugh*, 639 F.3d 1250, 1256 (10th Cir. 2011) (citing *U.S. v. Albert*, 579 F.3d 1188, 1197 (10th Cir. 2009)). "The detaining officer needs only to articulate 'some minimal level of objective justification' for the detention." *U.S. v. Briggs*, 720 F.3d 1281, 1285 (10th Cir. 2013) (quoting *U.S. v. Sokolow*, 490 U.S. 1, 7 (1989)).

In *U.S. v. Fisher*, the Tenth Circuit held that there was reasonable suspicion to detain a plaintiff for shoplifting given the totality of the circumstances. 99 F. App'x. 190, 194 (10th Cir. 2004). There, the plaintiff attempted to steal lithium batteries by placing the items in another section of the store to later retrieve them. *Id*. A store employee noticed the plaintiff try to hide something from the electronics aisle as he moved through the store. *Id*. at 191. The plaintiff made his way to the snack aisle, placed the items there, and quickly pulled his hand away from them. *Id*. The plaintiff then moved his body to shield the items from view of the store employee. *Id*. Eventually, the plaintiff left the snack aisle, where the store employee found the batteries. *Id*. The store employee contacted the police, as she knew lithium batteries were used to make methamphetamine. *Id*. at 192. When considering these facts together, as well as the responding officers' experiences, the court held there was reasonable suspicion to detain the plaintiff. *Id*. at 194.

Similar to the plaintiff in *Fisher*, Plaintiff's actions in this case would indicate to the reasonable person he may be shoplifting. Here, Plaintiff was nonresponsive when asked if the RV lights were stolen. ECF 1 at ¶¶ 11-12, 14. He would not remove them from his pants pockets. *Id*. When cited for the wipe packages, Plaintiff asked if he would be for the RV lights as well. *Id*. at ¶ 14. Defendant detained Plaintiff further to investigate if the RV lights were stolen in addition to the wipe packages. *Id*. at ¶ 15. Moreover, Plaintiff had earlier stuffed the wipe packages, thought to be the products of shoplifting, into his jacket pockets. *Id*. at ¶ 8. Like the plaintiff in *Fisher*,

Plaintiff in this case was furtive throughout most of the incident. Considering the totality of the circumstances, Defendant possessed reasonable suspicion to detain Plaintiff in relation to the RV lights. The Court finds that Defendant should be entitled to qualified immunity.

d) <u>Unreasonable Search (Claim Two)</u>

When analyzing whether a defendant is entitled to qualified immunity from a Fourth Amendment claim, courts must determine whether the defendant had arguable reasonable suspicion—i.e., whether a reasonable officer could have believed that reasonable suspicion existed. *Cortez v. McCauley*, 478 F.3d 1108, 1120, 1123 (10th Cir. 2007). A pat-down search, or frisk, is constitutionally valid only if it is reasonable. U.S. Const. amend. IV; *Terry*, 392 U.S. at 19. In other words, a pat-down search must be justified by a reasonable suspicion that a person is armed and dangerous. *U.S. v. Rice*, 483 F.3d 1079, 1083 (10th Cir. 2007); *see also U.S. v. Manjarrez*, 348 F.3d 881, 886 (10th Cir. 2003) ("An officer may pat-down a suspect if the facts available to the officer would warrant a man of reasonable caution to believe that a frisk would be necessary to protect himself."). "Although it is of course true that officers need not be absolutely certain that [an] individual is armed before taking protective measures such as a pat-down search, such a search is also not to be conducted as a matter of course during every investigative detention." *U.S. v. Garcia*, 459 F.3d at 1063–64 (internal citations and quotation marks omitted). An officer is permitted to "conduct a pat[-]down search (or 'frisk') if he or she 'harbors an articulable and reasonable suspicion that the person is armed and dangerous.'" *Id*. at 1064 (quoting *U.S. v. Hishaw*, 235 F.3d 565, 570 (10th Cir. 2000)).

The circumstances necessary to arouse reasonable suspicion fall considerably short of satisfying a preponderance of the evidence standard. *U.S. v. Garcia*, 751 F.3d 1139, 1143 (10th Cir. 2014) (citing *U.S. v. Arvizu*, 534 U.S. 266, 274 (2002)). It must meet only a "minimum level of

13

objective justification." *Rice*, 483 F.3d at 1083 (quotation omitted). In analyzing reasonable suspicion, a court does not "consider each of an officer's observations in isolation, but rather" considers "the totality of the circumstances, taking into account an officer's reasonable inferences based on training, experience, and common sense." *Garcia*, 751 F.3d at 1143 (quotation omitted); *U.S. v. Fager*, 811 F.3d 381, 386 (10th Cir. 2016) ("[A] reasonable suspicion analysis is still first and foremost a multi-factor test based on the totality of the circumstances."). The totality of the circumstances test looks at the officer's knowledge and observations as well as the circumstances in which the officer is working. *Rice*, 483 F.3d at 1084–85.

The primary justification for a pat-down search is an officer's concern "that [his or her] safety or that of others was in danger." *Terry,* 392 U.S. at 27. "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id*. The Tenth Circuit has held that officer safety concerns have justified a pat-down search in circumstances in which the officer had limited specific information leading him to believe that an individual was armed or dangerous and no knowledge of the individual's having possessed a weapon. *See Garcia*, 751 F.3d at 1142; *see also U.S. v. McRae,* 81 F.3d 1528, 1536 (10th Cir. 1996) (concluding an officer had reasonable suspicion to perform a pat-down search of McRae because the officer might be compelled to turn his back to McRae to search a car, he was alone with McRae on an isolated stretch of highway, he received information that McRae had a criminal history, McRae put on his jacket before exiting his vehicle, and "a jacket is a likely place in which to store a weapon"); *U.S. v. Manjarrez,* 348 F.3d 881, 886–87 (10th Cir. 2003) (concluding the officer "could not reasonably be expected to leave [d]efendant in his patrol car, turn his back on [d]efendant . . . and search the car without first checking [d]efendant for weapons" even when the

officer had no knowledge of any previous criminal history and the defendant was not acting suspiciously). Additionally, other factors that can influence an officer's reasonable suspicion include (but are not limited to) the time of day when and the place where the pat-down occurred, any previous encounters the officer had with the defendant, the defendant's criminal history, the defendant's nervousness, and the defendant's history of drug use. *Garcia,* 751 F.3d at 1144–47.

In *U.S. v. Gurule*, the Tenth Circuit found reasonable suspicion to search the plaintiff in a poorly lit gas station lot. 935 F.3d 878, 887 (10th Cir. 2019). There, the plaintiff was stopped in the lot at 10:30 p.m. *Id*. The officers observed an unknown item present in the plaintiff's pocket. *Id*. at 886. The plaintiff's vehicle also presented risks, as the backseat of the plaintiff's car contained a "great deal of property" and unknown items. *Id*. at 886-87. The court also discussed that there is danger associated with unfamiliar vehicles and persons, but especially if they had been stopped before. *Id*. Here, Plaintiff walked out of the store, with unbagged items, into the parking lot at 9:02 p.m. in late summer. ECF 1 at ¶ 7. Defendant followed Plaintiff to Plaintiff's car to review the receipt. *Id*. When Defendant caught up to Plaintiff and asked for the receipt, Plaintiff put the items into his jacket inside pockets. *Id*. at ¶¶ 8, 9. While outside, Defendant was alone and only caught up after Plaintiff had been at his car for a moment. *Id*. Considering the Tenth Circuit's reasoning in *Gurule*, it is reasonable to think that Plaintiff may be armed with weapons hidden in his coat or pant pockets. Plaintiff's behavior could be interpreted as furtive, given he stuffed his hands, which held the wipe packages, into his inside jacket pockets. The interaction between the two of them began in the dark parking lot of the store, late at night. On these facts, accepted as true, the Court finds that there was reasonable suspicion to search Plaintiff for weapons.

In his Response, Plaintiff references one of his several past lawsuits, *Montgomery v. Cruz*. No. 20-cv-03189-PAB-MEH, 2021 WL 8129502 (D. Colo. June 9, 2021). Plaintiff argues that

*Cruz* establishes that there was not reasonable suspicion to believe he was armed and dangerous. In *Cruz*, there was not reasonable suspicion (based on the allegations in the complaint) to search given the totality of the circumstances. There, Plaintiff was stopped inside a Walmart store in the afternoon and handcuffed after reaching for his wallet. He was stopped from leaving as he had not produced a receipt for the items he was carrying out. Crucially, Plaintiff's items were also seized without a pat-down. Here, Plaintiff was stopped at his car, late at night, where it would be dark outside. Defendant was alone with Plaintiff, having only caught up to him after Plaintiff got to his car. It would be in the interest of Defendant's safety to search Plaintiff, especially after he stuffed the items in his pockets. Simply put, the facts in this case are not analogous to those in *Cruz*.[3]

## II.  Leave to Amend

Having found that Plaintiff inadequately pleaded his claims, the Court turns to the issue of whether dismissal should be with or without prejudice. Generally, in a case involving a pro se litigant, the Tenth Circuit has held that if "it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend." *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990). "Particularly where deficiencies in a complaint are attributable to oversights likely the result of an untutored pro se litigant's ignorance of special pleading requirements, dismissal of the complaint without prejudice is preferable." *Id*. Thus, in this jurisdiction, a court typically does not dismiss a claim under Fed. R. Civ. P. 12(b)(6) until the plaintiff has been provided notice and an opportunity to amend the complaint to cure the defective allegations. *See Bellmon*, 935 F.2d at 1109-10.

---

[3] Because this Recommendation reaches the merits of the qualified immunity analysis, the Court does not reach the matter of issue preclusion raised by Defendant.

Here, Plaintiff is proceeding pro se, has not previously amended his pleading, and has not yet received guidance as to any defective allegations from the Court. Plaintiff's statements in his Complaint and Response lead the Court to believe that it is possible (even if unlikely) that some of the deficiencies found herein may be cured. Therefore, because it is not evident that amendment would be futile, the Court recommends Plaintiff be allowed leave to amend.

## CONCLUSION

Defendant should be entitled to qualified immunity because he possessed reasonable suspicion, and Plaintiff has failed to cite to clearly established law. The Court respectfully RECOMMENDS Defendant's Motion [filed May 5, 2022; ECF 17] be **GRANTED**,[4] and that Plaintiff's claims be dismissed without prejudice.

Respectfully submitted this 17th day of August, 2022, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

---

[4] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).