IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Case No. 21-cv-02553-PAB-CYC

WILLIAM MONTGOMERY,

     Plaintiff,

v.

TRAVIS LORE,

     Defendant.

_____

**ORDER**
_____

This matter is before the Court on the Recommendation of United States

Magistrate Judge [Docket No. 77].  The Recommendation addresses the defendant's

Motion to Dismiss Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) on Qualified

Immunity Grounds [Docket No. 64].  The Court has jurisdiction pursuant to 28 U.S.C.

§ 1331.

## I.    BACKGROUND[1]

On September 17, 2019, plaintiff William Montgomery entered a Walmart

Superstore at approximately 8:36 p.m. to go shopping.  Docket No. 61 at 5, ¶ 5.  Plaintiff

purchased some hand wipes and disinfecting wipes ("wipe packages") at the register

and declined a plastic bag for "environmental reasons."  *Id*. at 5–6, ¶¶ 6, 8.  At

approximately 9:02 p.m., plaintiff left the store while carrying the items "in hand."  *Id*. at

---

[1] The Court assumes that the allegations in plaintiff's amended complaint are true in
considering the motion to dismiss.  *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir.
2011).

5–6, ¶¶ 6-7.  Defendant Travis Lore, an Aurora Police Officer, was "posted up" at the

store's exit and followed plaintiff to plaintiff's vehicle in the nearby parking lot.  *Id*. at 6,

¶ 7.  Once the defendant caught up to plaintiff, the defendant asked to see plaintiff's

receipt.  *Id*., ¶ 8.  Plaintiff declined to provide a receipt and placed the wipe packages in

the inside pockets of his jacket.  *Id*.  Defendant requested plaintiff's receipt several more

times and then asked for plaintiff's identification.  *Id*., ¶ 9.  Plaintiff asked if he was being

detained, and defendant responded affirmatively.  *Id*.  Defendant then told plaintiff to sit

on the ground, which plaintiff did.  *Id*.  Moments later, defendant asked plaintiff to stand,

and he escorted plaintiff back to the store for further investigation.  *Id*.  At the store,

plaintiff provided his identification to defendant.  *Id*.

Defendant then patted down plaintiff.  *Id*., ¶ 10.  Plaintiff asked if defendant

thought he was armed, and defendant replied, "I don't know you, I don't know you."  *Id*.

One of plaintiff's outer jacket pockets contained two "RV body lights," which plaintiff had

purchased on another occasion and had thought about returning.  *Id*. at 7, ¶ 11.  Plaintiff

never removed the RV lights from his pocket during the shopping trip.  *Id*.  Defendant

patted down the outer jacket pocket with the RV lights, but did not reach into the pocket

to retrieve the lights.  *Id*.  Plaintiff believes that defendant acknowledged the RV lights

were not weapons because defendant asked plaintiff whether these items were stolen in

addition to the wipes.  *Id*.  Plaintiff did not respond, and defendant then reached into

plaintiff's inner jacket pocket that "contained the two packages of wipes, that [defendant]

had observed [plaintiff] place in [the inner jacket pocket] initially" and removed the wipe

packages.  *Id*., ¶ 12.  Shortly afterwards, two more Aurora police officers, Drew

Limbaugh and Luke Ingersoll, arrived at the store to assist the defendant.  *Id*., ¶ 13.

2

Defendant asked plaintiff to sit down, and Officers Limbaugh and Ingersoll stood with plaintiff while the defendant left the area to investigate the wipe packages.  *Id*. at 7–8, ¶¶ 13–15.

At this point, Officer Limbaugh patted down plaintiff, but did not pat down plaintiff's outer jacket pocket that contained the RV lights.  *Id*. at 8, ¶ 14.  Officer Limbaugh reached into plaintiff's outer jacket pocket and, before proceeding to remove the RV light, asked plaintiff, "Is that another stolen item in your pocket, what's that?".  *Id*. Plaintiff responded, "[l]ook, I don't consent to searches."  *Id*.  Officer Limbaugh then briefly "half-removed" one of the RV lights from plaintiff's outer jacket pocket before returning it to the pocket.  *Id*.

Approximately fifteen minutes later, defendant returned and told plaintiff that he would be issuing him a shoplifting citation.  *Id*., ¶ 15.  Officer Ingersoll then asked plaintiff, "Is the stuff in your front left pockets more merchandise from the store, that Officer Limbaugh looked at?  Grab that out of your front pocket there."  *Id*.  Plaintiff replied, "I don't consent to any searches."  Officer Ingersoll reached into plaintiff's outer jacket pocket, retrieved both RV lights, and handed them to defendant.  *Id*. at 8–9, ¶ 15. Defendant told plaintiff that defendant would "be holding onto them while he started an entirely new investigation with the store."  *Id*.

Fifteen minutes later, defendant returned and informed plaintiff that he would be citing him for shoplifting the two RV lights in addition to the two packages of wipes.  *Id*. at 9, ¶ 16.  A few minutes later, defendant explained the charges and released plaintiff, but did not return the wipe packages or RV lights.  *Id*., ¶ 17.  The next day, defendant

informed plaintiff over the phone that all theft charges would be dropped.  *Id*., ¶ 18.

Defendant gave plaintiff instructions for retrieving the items from police custody.  *Id*.

On September 17, 2021, plaintiff filed a complaint against defendant for the

following Fourth Amendment violations: (1) unreasonable "relocation of person"; (2)

unreasonable search; (3) unreasonable seizure of the two wipe packages; (4)

unreasonable seizure of the RV lights; and (5) unreasonable detention after seizing the

RV lights.  Docket No. 1 at 9–14.  Defendant filed a motion to dismiss the claims on May

11, 2022 based on qualified immunity.  Docket No. 17.  Magistrate Judge Hegarty

issued a recommendation on defendant's motion on August 17, 2022.  Docket No. 31.

Plaintiff filed an objection on September 15, 2022.  Docket No. 34.  Defendant

responded to the objection, Docket No. 35, and plaintiff filed a reply.  Docket No. 36.

On March 9, 2023, the Court overruled and accepted in part the magistrate

judge's recommendation.  Docket No. 37.  The Court accepted the magistrate judge's

recommendation that plaintiff's Fourth Amendment claims for the (1) unreasonable

"relocation of person"; (2) unreasonable search; and (3) unreasonable seizure of the

two wipe packages be dismissed without prejudice.  *Id*. at 16–17.  However, the Court

overruled the magistrate judge's recommendation that plaintiff's Fourth Amendment

claims for the (4) unreasonable seizure of the RV lights and (5) unreasonable detention

after seizing the RV lights be dismissed.  *Id*. at 10–15.  Plaintiff filed an amended

complaint on April 5, 2024 that alleged the following Fourth Amendment violations: (1)

unreasonable search; (2) unreasonable seizure of the RV lights; and (3) unreasonable

detention after seizing the RV lights.  Docket No. 61 at 10–15.

## II.    LEGAL STANDARD

### A.  Objections to Magistrate Judge Recommendations

The Court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3).  An objection is "proper" if it is both timely and specific.  *United States v. One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996).  A specific objection "enables the district judge to focus attention on those issues – factual and legal – that are at the heart of the parties' dispute."  *Id.*

In the absence of an objection, the district court may review a magistrate judge's recommendation under any standard it deems appropriate.  *See Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991); *see also Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings.").  The Court therefore reviews the non-objected to portions of the recommendation to confirm that there is "no clear error on the face of the record."  Fed. R. Civ. P. 72(b), Advisory Committee Notes.  This standard of review is something less than a "clearly erroneous" or "contrary to law" standard of review, Fed. R. Civ. P. 72(a), which in turn is less than a de novo review.  Fed. R. Civ. P. 72(b).  Because plaintiff is proceeding pro se, the Court will construe his objections and pleadings liberally without serving as his advocate.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

### B. Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible." *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)). Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted). However, a plaintiff still must provide "supporting factual averments" with his allegations. *Cory v. Allstate Insurance*, 584 F.3d 1240, 1244 (10th Cir. 2009) ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." (citation omitted)). Otherwise, the Court need not accept conclusory allegations. *Moffet v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1232 (10th Cir. 2002).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)). If a complaint's allegations are "so

6

general that they encompass a wide swath of conduct, much of it innocent," then

plaintiff has not stated a plausible claim. *Khalik*, 671 F.3d at 1191 (quotations omitted).

Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still

must contain either direct or inferential allegations respecting all the material elements

necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at

1286 (alterations omitted).

### C. Qualified Immunity

"Qualified immunity balances two important interests – the need to hold public

officials accountable when they exercise power irresponsibly and the need to shield

officials from harassment, distraction, and liability when they perform their duties

reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). A court should resolve

questions of qualified immunity at the earliest possible stage of litigation. *Anderson v.

Creighton,* 483 U.S. 635, 646 n.6 (1987). However, a plaintiff facing a qualified

immunity challenge still does not have a heightened pleading standard. *Currier v.

Doran,* 242 F.3d 905, 916-17 (10th Cir. 2001).

Under the doctrine of qualified immunity, "government officials performing

discretionary functions generally are shielded from liability for civil damages insofar as

their conduct does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800,

818 (1982). Thus, to survive a motion to dismiss under Rule 12(b)(6) "where a qualified

immunity defense is implicated, the plaintiff 'must allege facts sufficient to show

(assuming they are true) that the defendants plausibly violated their constitutional

rights.'" *Hale v. Duvall*, 268 F. Supp. 3d 1161, 1164 (D. Colo. 2017) (quoting *Robbins v.*

*Oklahoma ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1249 (10th Cir. 2008)).  When

a defendant raises the defense of qualified immunity, a "plaintiff carries a two-part

burden to show: (1) that the defendant's actions violated a federal constitutional or

statutory right, and, if so, (2) that the right was clearly established at the time of the

defendant's unlawful conduct.*"  T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017)

(internal quotation marks omitted).  Courts are "permitted to exercise their sound

discretion in deciding which of the two prongs of the qualified immunity analysis should

be addressed first in light of the circumstances in the particular case."  *Pearson*, 555

U.S. at 236.

III.    ANALYSIS

The magistrate judge recommended dismissing plaintiff's claims of unreasonable

search and unreasonable seizure of the RV lights claims, finding that defendant is

entitled to qualified immunity because plaintiff failed to cite clearly established law

stating defendant had a duty to intervene in an unreasonable search and seizure by his

fellow officers.  Docket No. 77 at 9–10.  The magistrate judge additionally

recommended dismissing plaintiff's unreasonable detention claim on qualified immunity

grounds because the defendant possessed reasonable suspicion that the RV lights

were stolen.  *Id*. at 10–14.  The magistrate judge additionally recommended denying

plaintiff leave to amend his complaint because the claims are being dismissed based on

the finding that the defendant is entitled qualified immunity.  *Id*. 14 n.2.

Plaintiff makes three objections to the magistrate judge's recommendation: 1) the

defendant is liable for the search and seizures conducted by Officers Limbaugh and

Ingersoll; 2) there is clearly established law that dictates plaintiff's constitutional rights

8

were violated by the defendant's failure to intervene in Officer Limbaugh's and

Ingersoll's search and seizure; and 3) defendant lacked reasonable suspicion that the

RV lights were stolen necessary to conduct a lawful investigative detention.  Docket

No. 79 at 1–15.

### A.  Objection One

The magistrate judge did not reach defendant's argument that plaintiff failed to

state a claim under 42 U.S.C. § 1983 for a Fourth Amendment unreasonable search

and seizure.  Docket No. 77 at 10.  Rather, the magistrate judge dismissed plaintiff's

unreasonable search and seizure claims because defendant was entitled to qualified

immunity, as there was not clearly established law stating that the defendant had the

duty to intervene to prevent an unreasonable search and seizure.  *Id*. at 10.  Thus,

plaintiff's objection that the defendant was liable for Officer Limbaugh and Ingersoll's

activities is moot.

### B.  Objection Two

The magistrate judge recommended that plaintiff's unreasonable search and

seizure claims be dismissed because defendant is entitled to qualified immunity.  *Id*.

Specifically, the magistrate judge found that "the Tenth Circuit held it was not clearly

established 'that an officer must intervene to prevent an illegal search and seizure.'"  *Id*.

(quoting *Shaw v. Schulte*, 36 F.4th 1006, 1020 (10th Cir. 2022)).  Plaintiff argues that it

was clearly established in the Tenth Circuit at the time of the incident that defendant

had a duty to intervene in an unreasonable search and seizure.  Docket No. 79 at 2–5.

Moreover, plaintiff argues that "most other circuits recognize that failure to intervene

9

claims can involve failing to stop constitutional deprivations beyond just the use of excessive force." *Id*. at 4.

Plaintiff argues that defendant's cited authorities for the proposition that the duty to intervene was not clearly established law are inapposite. *Id*. at 2–4. Plaintiff asserts that *Bledsoe v. Carreno,* 53 F.4th 589, 617 (10th Cir. 2022), is factually distinguishable from the instant suit. Id. at 2–3. Plaintiff relies on dicta in *Bledsoe*, in which the Tenth Circuit held, while defendants were entitled to qualified immunity on the plaintiff's "failure to intervene claim because such a claim was not clearly established," the plaintiff nonetheless "might have argued that the duty to intervene in the situation alleged here would have been obvious to any objectively reasonable law enforcement officer." *Bledsoe*, 53 F.4th at 617. However, the plaintiff in *Bledsoe* failed to present such an argument, *id*., while plaintiff in the instant suit asserts that he is "making such an argument" and as such *Bledsoe*'s holding does not extend to plaintiff. Docket No. 79 at 3. Plaintiff also argues that defendant's reliance on *Harris v*. *Mahr,* 838 F. App'x 339, 343–44 (10th Cir. 2020) (unpublished), for the proposition that "constitutional principles surrounding a failure to intervene in an unlawful search [are] unclear," Docket No. 64 at 13, is misplaced as it is "clearly factually distinguishable" from the instant suit. Docket No. 79 at 2.

Regardless of how factually distinguishable the above cases may be, plaintiff nonetheless fails to refute *Shaw*'s holding that was the basis for the magistrate judge's holding on qualified immunity. Docket No. 77 at 10. The Tenth Circuit in *Shaw* held that its statement "all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement

officers in their presence" (quoting *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1210

(10th Cir. 2008)), was made "in the context of an excessive force claim."  *Shaw*, 36

F.4th at 1020.  As a result, the Tenth Circuit held that "*Vondrak* does not clearly

establish that an officer must intervene to prevent an illegal search and seizure."  *Id.*;

*see also Harris*, 838 F. App'x at 343 (*Vondrak* "does not discuss unlawful entries or

searches, thus making it a highly generalized statement").[2]

The cases plaintiff cites as clearly established law are distinguishable.  Docket

No. 79 at 4.  The Tenth Circuit has held that, "in order for the law to be clearly

established, there must be a Supreme Court or Tenth Circuit decision on point, or the

clearly established weight of authority from other courts must have found the law to be

as the plaintiff maintains."  *Zia Tr. Co. ex rel. Causey v. Montoya,* 597 F.3d 1150, 1155

(10th Cir. 2010) (citation omitted).  Plaintiff argues that *Reid v. Wren*, 57 F.3d 1081,

1995 WL 339401 (10th Cir. 1995), is "**literally exactly**, *fact-for-fact*, what Plaintiff is

---

[2] To the extent that plaintiff relies on *Bledsoe*'s dicta, Docket No. 79 at 2–5, to
allege that defendant's conduct was so "obviously egregious" that "less specificity is
required from prior case law to clearly establish the [constitutional violation]," *Casey v.
City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007) (citation omitted), the Court
rejects that argument.  *Bledsoe* states, if the plaintiff alleged that "the duty to intervene
in the situation alleged here would have been obvious to any objectively reasonable law
enforcement officer," the plaintiff may have been able to overcome the qualified
immunity bar despite *Shaw*'s holding.  *Bledsoe*, 53 F.4th at 617 (citing *Hope v. Pelzer*,
536 U.S. 730, 741 (2002)).  In *Hope*, the constitutional violation at issue was an Eighth
Amendment cruel and unusual punishment claim, rather than a Fourth Amendment
unreasonable search and seizure claim.  *Hope*, 536 U.S. at 733–35.  Further, in *Harris*,
the court held that the defendant's "failure to take additional steps" to prevent an
unreasonable search "is not the type of 'egregious' conduct that warrants foregoing our
traditional requirement of an on-point case."  *Harris*, 838 F. App'x at 344.  Plaintiff
similarly fails to allege sufficiently egregious conduct, *see* Docket No. 79 at 5, that would
suggest "foregoing our traditional requirement of an on-point case."  *Harris*, 838 F.
App'x at 344.

likewise pleading." Docket No. 79 at 4. However, the Tenth Circuit in *Harris* found that

*Reid*, an unpublished case, among other cases cited by the plaintiff, "fail[s] to show that

the law was clearly established at the time of the incident." *Harris*, 838 F. App'x at 343.

"An unpublished opinion . . . provides little support for the notion that the law is clearly

established on this point." *Id*. (quoting *Mecham v. Frazier*, 500 F.3d 1200, 1206 (10th

Cir. 2007)). Plaintiff also cites *Livers v. Schenck*, 700 F.3d 340, 360 (8th Cir. 2012),

Docket No. 79 at 4, to apparently argue that the "clearly established weight of authority

from other courts must have found the law to be as the plaintiff maintains." *Montoya,*

597 F.3d at 1155 (citation omitted). In *Livers*, the Eighth Circuit found that "other

circuits have recognized a duty to intervene outside of the excessive force context," and

cited *Reid* as an example. *Livers*, 700 F.3d at 360. However, as described above,

more recent precedent, including *Harris* and *Shaw*, undermine the assertion that *Reid* is

clearly established law. Thus, plaintiff's reliance on *Livers* does not show that the

"clearly established weight of authority from other courts . . . found the law to be as the

plaintiff maintains." *Montoya,* 597 F.3d at 1155. Accordingly, the Court overrules

plaintiff's second objection.

### C. <u>Objection Three</u>

The magistrate judge recommended that plaintiff's third claim for unreasonable

detention to investigate the RV lights also be dismissed. Docket No. 77 at 10–14.

Given the new allegations in plaintiff's complaint, the magistrate judge found that

defendant is entitled to qualified immunity because he had reasonable suspicion to

briefly detain plaintiff and investigate whether the RV lights were stolen. *Id*. Plaintiff

objects, arguing that the factual differences between his original and his amended

complaints should not change the Court's holding, Docket No. 37 14–15, that

defendant's detention to investigate the RV lights as stolen was not based upon

reasonable suspicion.  Docket No. 79 at 6–15.  Specifically, plaintiff disputes the

significance of the RV lights being located in the same jacket as the wipe packages and

the significance of Officer Ingersoll announcing in defendant's presence, "[i]s the stuff in

your front left pockets more merchandise from the store, that Officer Limbaugh looked

at?  Grab that out of your front pocket there," before retrieving the RV lights and

handing them to defendant.  *Id*. at 8, ¶ 15.  Further, plaintiff argues that the magistrate

judge erred by considering plaintiff's refusal to answer defendant's questions and that

the RV lights were still in their original package in its reasonable suspicion

determination.  *Id*. at 7–15.[3]

Fourth Amendment detentions require reasonable suspicion of criminal activity.

*Romero v. Story*, 672 F.3d 880, 886 (10th Cir. 2012).  "An officer who stops and briefly

detains a person for questioning must be able to point to specific and articulable facts

which, taken together with rational inferences from those facts, reasonably warrant that

intrusion."  *Id*. (internal quotations and citation omitted).  "Reasonable suspicion does

not rise to the level of probable cause, but it does demand something more than an

inchoate and unparticularized suspicion or hunch."  *Id*. (internal quotations and citation

omitted).

---

[3]  Plaintiff appears to challenge the magistrate judge's finding that defendant had
reasonably determined that the wipes were stolen.  Docket No. 79 at 8–9.  The Court
will not consider this objection.  The magistrate judge previously recommended that
defendant's claims related to the search and seizure of the wipe packages be
dismissed, Docket No. 31 at 17, and the Court accepted that recommendation.  Docket
No. 37 at 16–17.

The potential bases for defendant's reasonable suspicion to investigate the RV

lights are the following: defendant witnessed Officer Ingersoll (1) ask plaintiff, "[i]s the

stuff in your front left pockets more merchandise from the store, that Officer Limbaugh

looked at?  Grab that out of your front pocket there;" and (2) retrieve the unopened RV

light packages from plaintiff's outer jacket pocket, the same jacket in which defendant

saw plaintiff place the wipe packages.  Docket No. 61 at 8 –9, ¶¶ 14–15.

When determining the existence of facts that support reasonable suspicion,

courts consider information supplied by a third-party and not only that based on the

officer's personal observations.  *United States v. McHugh*, 639 F.3d 1250, 1257–58

(10th Cir. 2011); *Adams v. Williams*, 407 U.S. 143, 147–49 (1972).  If the third-party

information was supplied by another law enforcement officer, "knowledge and

reasonable suspicions of one officer can be imputed to another."  *United States v.*

*Whitley*, 680 F.3d 1227, 1234 (10th Cir. 2012).  As is relevant here,

> Under the horizontal collective knowledge doctrine, a number of individual
> officers have pieces of the probable cause or reasonable suspicion puzzle,
> but no single officer has sufficient information to satisfy the necessary
> standard. The inquiry in such a circumstance is whether the individual
> officers have communicated the information they possess individually,
> thereby pooling their collective knowledge to satisfy the relevant standard.

*Id.* at 1234 n. 3 (internal quotation and citation omitted).  Under the horizontal collective

knowledge doctrine, "courts may consider whether officers who are acting together

*collectively* possess sufficient information to support probable cause, provided that they

have actually communicated the information to each other."  *Felders ex rel. Smedley v.*

*Malcom*, 755 F.3d 870, 881 (10th Cir. 2014).  In the presence of defendant, Officer

Ingersoll merely asked plaintiff whether the products in plaintiff's jacket pocket were

stolen.  Docket No. 61 at 8–9, ¶ 15.  Officer Ingersoll did not communicate any

14

information that supported reasonable suspicion that the RV lights were stolen. *Id.* Nor

does defendant argue that Officer Ingersoll had information to support reasonable

suspicion. *See* Docket No. 64 at 9–14. Therefore, there was no knowledge from a

fellow officer that defendant could have relied on to support his reasonable suspicion

that the RV lights were stolen. *See United States v. Shareef,* 100 F.3d 1491, 1504

(10th Cir. 1996) (holding that where one officer knew the suspect's height and weight

and the other officer knew the height and weight listed of a person of interest in the

National Crime Information Center, but failed to communicate this information to one

another, "*neither* officer knew the significance of the information, and the information

could contribute to neither officer's suspicion of the suspect").

The next issue is whether defendant witnessing Officer Ingersoll retrieve the

unopened RV lights from the same jacket as the wipe packages provided reasonable

suspicion that the RV lights were stolen. Unlike the wipe packages, defendant did not

witness plaintiff walk out of the store with the RV lights in his hands. Docket No. 61 at

9, ¶ 16. Furthermore, defendant saw plaintiff place the wipe packages in plaintiff's inner

jacket pocket. *Id.* at 6, ¶ 8. The RV lights, however, were in plaintiff's outer jacket

pocket. *Id.* at 7, ¶ 11. Regardless of the significance, if any, of the wipe packages and

the RV lights being in different locations in plaintiff's jacket, the unopened RV lights

being retrieved from the same jacket that contained the wipe packages does not change

the fact that defendant did not have "specific and articulable facts which, taken together

with rational inferences from those facts, reasonably warrant[ing]" plaintiff's investigatory

detention regarding theft of the RV lights. *Romero*, 672 F.3d at 886 (citation omitted).

15

Thus, defendant's detention of plaintiff for fifteen additional minutes to investigate the RV lights, without any objectively reasonable suspicion that the RV lights were stolen merchandise, exceeded the scope of plaintiff's detention for the wipe packages. *See United States v. McSwain*, 29 F.3d 558, 561 (10th Cir. 1994).  Accordingly, plaintiff has stated a plausible claim that defendant violated his Fourth Amendment rights by detaining him to investigate the RV lights.  The Court also finds that the law was clearly established that an officer cannot continue to detain a suspect, absent reasonable suspicion, once the purpose of the stop is satisfied.  *See id.*; *see also Vasquez v. Lewis*, 834 F.3d 1132, 1136 (10th Cir. 2016).  Accordingly, the Court sustains plaintiff's objection and overrules that portion of the recommendation that recommends dismissing the claim regarding plaintiff's detention for the RV lights.

### D.  **Non-Objected Portions of the Recommendation**

The Court has reviewed the remainder of the magistrate judge's recommendation to satisfy itself that there is "no clear error on the face of the record."  Fed. R. Civ. P. 72(b), Advisory Committee Notes.  Plaintiff did not object to the magistrate judge's recommendation that plaintiffs' claims be dismissed with prejudice.  The Court finds no error in this portion of the recommendation.  Based on this review, the Court has concluded that the remainder of the recommendation is a correct application of the facts and the law.

IV.     CONCLUSION

It is therefore

**ORDERED** that Plaintiff's Objection to the Magistrate Judge's Report and

Recommendation to Grant Def's MTD PTF's Amended Complaint [Docket No. 79] is

**OVERRULED in part and SUSTAINED in part**.  It is further

**ORDERED** that the Recommendation of United States Magistrate Judge [Docket

No. 77] is **OVERRULED in part and ACCEPTED in part**.  It is further

**ORDERED** that defendant's Motion to Dismiss Amended Complaint Pursuant to

Fed. R. Civ. P. 12(b)(6) on Qualified Immunity Grounds [Docket No. 64] is **GRANTED in**

**part and DENIED in part**.  It is further

**ORDERED** that plaintiff's first and second claim are **DISMISSED** with prejudice.


DATED February 4, 2025.


                                        BY THE COURT:


                                        _____
                                        PHILIP A. BRIMMER
                                        Chief United States District Judge