IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02553-PAB-CYC

WILLIAM MONTGOMERY,

    Plaintiff,

v.

TRAVIS LORE,

    Defendant.

---

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
---

**Cyrus Y. Chung, United States Magistrate Judge.**

    When a police officer stops a citizen based on reasonable suspicion that criminal activity is afoot, he must have additional reasonable suspicion to prolong the stop beyond the length required for its original purpose. But nothing prevents him from conducting additional investigation during the stop if it does not prolong the stop. Defendant Travis Lore moves for summary judgment on Plaintiff William Montgomery's claim of unreasonable detention, asserting all investigative activity came within the time reasonably required by the stop's original purpose, entitling him to qualified immunity. ECF No. 94 at 11–14. It did. Accordingly, the Court **recommends** that the defendant's motion for summary judgment be **GRANTED**.

### LEGAL STANDARDS

    A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A fact is material if under the substantive law it is essential to the proper disposition of the claim."

*Wright ex rel. Tr. Co. of Kan. v. Abbott Lab'ys, Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (quotation marks omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. The dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. "The moving party has both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quotation marks omitted).

If the moving party satisfies its initial burden, the non-moving party "may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Id.* (quotation marks omitted). The specific "facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007). Affidavits and testimony "must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient." *Tucker v. Faith Bible Chapel Int'l*, 36 F.4th 1021, 1030–31 (10th Cir. 2022). "The court views the record and draws all favorable inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

The plaintiff proceeds pro se. Federal courts must construe *pro se* plaintiff's pleadings "liberally" and hold them "to a less stringent standard than formal pleadings drafted by lawyers," though it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

## UNDISPUTED FACTS

The following facts are undisputed and identified by reference to "particular parts of materials in the record," Fed. R. Civ. P. 56(c)(1)(A).

On September 17, 2019 at around 8:35 P.M., the plaintiff entered a Walmart in Aurora, Colorado. ECF No. 94-1 at 00:00–00:20. He recorded the visit on his phone with a prologue indicating that he had prepaid items in his pockets, intended to buy more merchandise, and "might not show [his] receipt on the way out." *Id.* at 00:30–00:45. The defendant, an Aurora detective working an off-duty shift at the Walmart, stood guard near its front doors. ECF No. 94-3 at ¶ 2.

True to his word, the plaintiff purchased items inside and exited carrying them without a bag. ECF No. 94-2 at 00:00–01:15; ECF No. 94-4 at 00:00–00:12; ECF No. 94 ¶¶ 6, 8; ECF No. 99 ¶¶ 6, 8. Neither the defendant nor any Walmart employee stopped him, over which he expressed disappointment in the recording. ECF No. 94-1 at 12:25–12:58.

The plaintiff then reentered the store. ECF No. 94 ¶ 10; ECF No. 99 ¶ 10. After a few minutes inside, he purchased wipes at the electronics counter in the back of the store. ECF No. 94-5 at 00:00–01:51. At approximately 8:59 P.M., he exited the store, again carrying the items in his hand just as he had minutes before. ECF No. 94 ¶ 12; ECF No. 99 ¶ 12. This time, the defendant followed the plaintiff to the parking lot and asked him to produce a receipt for the items. ECF No. 94-6 at 00:00–00:50; ECF No. 94-1 at 26:03–26:46. The plaintiff did not immediately respond; the defendant asked again. ECF No. 94-1 at 26:03–26:46. The plaintiff responded by asking if the defendant was a "receipt Nazi," placing the wipes into the interior of his jacket, and asking whether he was being detained. *Id.*; ECF No. 94 ¶ 16; ECF No. 94-3 at ¶ 7; ECF No. 94-1 at 27:12–27:16. He received an affirmative response to his last question, and the defendant requested backup and a "cover car." ECF No. 94-1 at 27:12–27:30. The parties then

3

reentered the store, at which point the defendant informed the plaintiff that he believed that the plaintiff had stolen the items. *Id.* at 27:37–29:26, 32:36–32:41. The defendant then conducted a pat-down of the plaintiff and discovered items in his outer jacket pockets. *Id.* at 36:30–37:15; ECF No. 94-10 at 01:10–01:55.

At approximately 9:13 P.M., two cover officers arrived. ECF No. 94-9 at 00:20–00:30. The defendant then retrieved the wipes from the plaintiff, asserting that he did not believe that the wipes belonged to him. *Id.* at 00:42–00:55. The plaintiff objected to the search, asserting that the defendant could not remove the wipes pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968). The plaintiff then questioned whether the defendant believed that he had either reasonable suspicion or probable cause. ECF No. 94-9 at 01:00–01:05.

The defendant then asked the other officers if they could sit the plaintiff down while he figured out what the store wanted to do; he left the plaintiff in their care. *Id.* at 01:09–01:16. At approximately 9:14 P.M., the two cover officers complied with the request and escorted the plaintiff outside the store. *Id.* at 01:10–01:30. One of them conducted another pat down of the plaintiff. *Id.* at 01:53–02:25. In doing so, he discovered RV lights that were clearly visible in the plaintiff's outer open jacket pocket. *Id.*; ECF No. 94 ¶ 34; ECF No. 99 ¶ 34.

At approximately 9:28 P.M., the defendant returned from his consultation with the store, then approached the plaintiff and two officers, explaining that he would be writing the plaintiff a summons for theft. ECF No. 94-11 at 15:13–15:56. At the same time, the second cover officer asked the plaintiff about the RV lights in his front jacket pockets, then retrieved the items and handed them to the defendant. *Id.* at 16:37–16:55. The defendant then asked the plaintiff whether the RV lights were stolen from Walmart. *Id.* at 16:55–17:30. The plaintiff remained silent. *Id.*

4

The defendant and one of the cover officers then went to the officers' vehicle to complete a summons and trespass paperwork. *Id.* at 17:55–17:59.

The task took longer than originally anticipated. The defendant mistakenly began writing on a traffic ticket form and had to restart the process of completing the summons using the correct form. ECF No. 94-12 at 03:04–03:15. In the meantime, the cover officer worked on the trespass notice. *Id.* at 00:00–03:32.

At approximately 9:44 P.M., the defendant and his accompanying cover officer rejoined the plaintiff, who had been with the second cover officer. ECF No. 94-11 at 31:48–31:59. The defendant informed the plaintiff that he was being issued a summons and citation and stated that the case could be dismissed, subject to the outcome of the investigation. *Id.* at 32:10–37:00. The defendant noted that Walmart was still "researching" the video evidence; nevertheless, he believed he had probable cause to issue the summons. *Id.* at 37:03–37:37. The defendant made clear that he still had to continue his investigation and would follow up with the plaintiff the following day. *Id.* at 37:30–37:52; ECF No. 94-3 at ¶ 23. That investigation revealed Walmart's surveillance video showing the plaintiff purchasing the items. ECF No. 94-3 ¶ 23. The defendant therefore contacted the plaintiff to inform him that the summons was being dismissed. *Id.* ¶ 24.

The plaintiff then filed this action. ECF No. 1. After a series of procedural twists and turns, a single claim for unlawful detention remained. *Montgomery v. Lore*, No. 21-CV-02553-PAB-CYC, 2025 WL 378400 (D. Colo. Feb. 4, 2025). This motion followed.

## ANALYSIS

The plaintiff's sole surviving claim asserts a claim for an Unreasonable Detention of Person Absent Arguable Reasonable Suspicion. ECF No. 61 at 14. The defendant moves for summary judgment, asserting entitlement to qualified immunity. ECF No. 94.

5

Under that doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To overcome the defense, "the onus is on the plaintiff to demonstrate (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Surat v. Klamser*, 52 F.4th 1261, 1270–71 (10th Cir. 2022) (quotation marks omitted); *see Hunt v. Montano*, 39 F.4th 1270, 1284 (10th Cir. 2022). The latter requirement requires showing "that Supreme Court or published Tenth Circuit cases, or the weight of authority from other courts, existing at the time of the violation, clearly established that such conduct constituted a violation of that right." *Baca v. Cosper,* 128 F.4th 1319, 1325 (10th Cir. 2025). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009), and need not address both prongs if the plaintiff fails to satisfy either one. *See Andersen v. DelCore*, 79 F.4th 1153, 1169 (10th Cir. 2023).

"The Fourth Amendment, made applicable to the States by way of the Fourteenth Amendment, guarantees '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993) (quoting U.S. Const, amend. IV) (internal citation omitted). It "protects people, not places, and wherever an individual may harbor a reasonable expectation of privacy, he is entitled to be free from unreasonable governmental intrusion." *Terry*, 392 U.S. at 9 (citation modified). The police, however, may conduct an investigative stop of an individual when they have a reasonable suspicion that the individual is engaging in criminal activity. *Id.* at 30. "A

6

determination of reasonable suspicion is based on 'an objective standard taking the totality of the circumstances . . . into account.'" *United States v. Rice*, 483 F.3d 1079, 1082 (10th Cir. 2007) (quoting *United States v. Johnson*, 364 F.3d 1185, 1189 (10th Cir. 2004)).

The scope of such a stop is limited. "[A] seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). "In considering whether an investigative stop is reasonable, [a court] conduct[s] a two-step inquiry, asking first whether the detention was justified at its inception and, second, whether the agents' actions were reasonably related in scope to the circumstances initially justifying the detention." *United States v. De La Cruz*, 703 F.3d 1193, 1196 (10th Cir. 2013) (quoting *Lundstrom v. Romero*, 616 F.3d 1108, 1120 (10th Cir. 2010)). The plaintiff does not contest the first step. ECF No. 99 at 6–10. At the second step, a court must determine whether the investigative detention "last[ed] no longer than [was] necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500 (1983); *cf. Rodriguez v. United States*, 575 U.S. 348, 354 (2015).

That is the case here. The purpose of the plaintiff's initial detention was to investigate whether the wipes were stolen. The defendant pursued that purpose and, when he finished doing so by handing a summons to the defendant, the plaintiff was free to leave. ECF No. 94-3 at ¶ 22.

The plaintiff protests. The investigation into the wipes was complete, he says, once the defendant said he would be "scratching [the plaintiff] a ticket for theft." ECF No. 99 at 6. But a stop's proper duration includes the time needed to issue a citation. *See, e.g.*, *United States v. Pettit*, 785 F.3d 1374, 1379 (10th Cir. 2015). That makes good sense: allowing a suspect simply to leave prior to issuing the citation makes the stop ineffectual.

The plaintiff resists this conclusion. On his view, the defendant purposefully delayed in issuing him a summons so that a secondary investigation could be completed. ECF No. 99 at 13. But he lacks evidence to support this assertion. Instead, the only evidence illuminating the timing of the defendant's issuance of the summons is the defendant's recorded statement that the delay comes from his initial use of an incorrect form. ECF No. 94-12 at 03:05–03:15; ECF No. 94-3 at ¶ 20. And the defendant corrected that action promptly thereafter by using the correct form and having one of the cover officers write the plaintiff a trespass notice so as to minimize the time that the plaintiff was detained. ECF No. 94-12 at 00:00–03:32; ECF No. 94-3 ¶ 19. Such an "innocent mistake" delaying issuance of the summons does not, without more, prolong a stop unconstitutionally. *United States v. Gholston*, 1 F.4th 492, 497 (7th Cir. 2021).

The plaintiff has an additional shot in his sling. The investigation into whether the RV lights he possessed were stolen, he says, was a new investigation separate from the one into the wipes. But the inquiry is not whether a new investigation took place alongside the original one. Such contemporaneous investigations are permissible. *See, e.g.*, *United States v. Baker*, 108 F.4th 1241, 1251 (10th Cir. 2024) ("When a dog sniff and alert occur contemporaneously with an officer's pursuit of the traffic-based mission of the stop, the stop is not prolonged."). Instead, the question is whether activities unrelated to the original purpose of the stop prolonged the stop. *See, e.g.*, *United States v. Frazier*, 30 F.4th 1165 (10th Cir. 2022) (concluding that because "each minute that the trooper spent arranging the dog sniff was time the citation-related tasks went unaddressed . . . his actions necessarily prolonged the stop"). And there, the plaintiff offers no argument. Indeed, the evidence shows that the defendant's compatriots largely engaged in the investigation into the RV lights while the defendant attended to the tasks related to his original purpose of investigating the wipes.

8

In an effort to change the trajectory of the debate, the plaintiff says that the defendant did not have reasonable suspicion to extend the plaintiff's detention to investigate the RV lights. ECF No. 99 at 6. After all, once tasks related to a stop's purpose are finished, "[a]n officer may question the [suspect] further if (1) the officer has an objectively reasonable and articulable suspicion that the driver is engaged in illegal activity, or (2) the [suspect] voluntarily consents to further questioning." *United States v. Patten*, 183 F.3d 1190, 1193 (10th Cir. 1999) (citing *United States v. Hunnicutt*, 135 F.3d 1345, 1349 (10th Cir. 1998)). And the Tenth Circuit, he notes, previously found a lack of reasonable suspicion in the RV lights to justify prolonging the detention. *See Montgomery v. Lore*, No. 23-1106, 2023 WL 8613523, at *6–7 (10th Cir. 2023).

But there, the case was in the motion to dismiss stage, where the complaint's factual allegations must be taken as true, *id.* at *3; *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), including its "facts showing that Officer Lore extended the detention of Mr. Montgomery beyond the time needed to investigate the alleged shoplifting of the wipes." *Lore*, 2023 WL 8613523, at *5. Here, at the summary judgment stage, the video evidence shows that the issues with the RV lights took place during a time still needed so the defendant could issue the plaintiff a summons for the alleged theft of the wipes. Once the summons issued, the detention appropriately ceased.

The short of it is that to show unconstitutional detention here, the plaintiff needed to show that something unrelated to the original purpose of the stop prolonged it. Unrelated activity — if indeed questioning about additional items found during an investigation into items suspected to be stolen is unrelated — may have occurred but, for aught that appears, took place while the defendant diligently attended to the purpose of the stop. That does not make a constitutional violation, entitling the defendant to qualified immunity.

Given the finding that there was no unconstitutional prolonging of the stop, the Court need not address the second prong of the qualified-immunity inquiry. *See Andersen*, 79 F.4th at 1169. It also need not address the argument that the fellow-officer rule gave the defendant reasonable suspicion to justify further investigation into the RV lights.

## CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS**[1] that the defendant's Motion for Summary Judgment, ECF No. 94, be **GRANTED**. For the same reasons, the Court **RECOMMENDS** that the plaintiff's motion for summary judgment, ECF No. 91, be **DENIED**. *See, e.g.*, *Dixon v. Silva-Markham Partners & Koelbel & Co.*, No. 1:22-CV-01558-NYW-SBP, 2025 WL 685091, at *16 (D. Colo. Feb. 21, 2025), *recommendation adopted*, 2025 WL 942782 (D. Colo. Mar. 28, 2025).

DATED this 24th day of February, 2026, at Denver, Colorado.

BY THE COURT:

_____
Cyrus Y. Chung
United States Magistrate Judge

---

[1] Be advised that all parties shall have fourteen days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive, or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676–83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen days after being served with a copy may bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). <u>Finally, all parties must consult and comply with the District Judge's practice standards for any specific requirements concerning the filing and briefing of objections.</u>