IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Case No. 21-cv-02553-PAB-CYC

WILLIAM MONTGOMERY,

     Plaintiff,

v.

TRAVIS LORE,

     Defendant.

_____

**ORDER**

_____

This matter comes before the Court on the Recommendation of United States Magistrate Judge [Docket No. 104], regarding Plaintiff's Motion for Summary Judgment, Docket No. 91, and Defendant's Motion for Summary Judgment.  Docket No. 94. Plaintiff William Mongtomery filed an objection.  Docket No. 108.  Defendant Travis Lore filed a response.  Docket No. 109.  The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I.    UNDISPUTED FACTS[1]

On September 17, 2019, around 8:35 p.m., plaintiff entered a Walmart located in Aurora, Colorado.  Docket No. 91 at 4, ¶ 1; Docket No. 94 at 3, ¶ 1.  At 8:43 p.m., plaintiff purchased items at the electronics counter located at the back of the store.

_____

[1] Upon review of the parties' briefing on their respective motions for summary judgment, the Court finds that the following facts are undisputed unless otherwise noted.

Docket No. 94 at 4, ¶ 6.  Defendant, an Aurora police officer, was working off-duty while in uniform that night.  *Id.*, ¶ 7.  From about 8:30 p.m. to 9:30 p.m., defendant was standing near the front doors of the store, adjacent to the front check-out aisles, observing customers and employees.  *Id.*

At approximately 8:46 p.m., plaintiff exited the store carrying unbagged merchandise and was not stopped by any employee or receipt checker.  *Id.*, ¶ 8.  At 8:51 p.m., plaintiff re-entered the store and purchased wipes at the electronics counter. *Id.*, ¶¶ 10-11.  Plaintiff exited the store for the second time at 8:59 p.m.  *Id.* at 5, ¶ 12. Defendant observed plaintiff pass the checkout lanes and nervously glance over his shoulder.  *Id.*  Defendant decided to make contact with plaintiff to confirm whether he had purchased the items that he was carrying out of the store.  *Id.*, ¶ 13.

In the parking lot, defendant asked plaintiff to show a receipt for the items that he was carrying.  *Id.*, ¶ 14.  Plaintiff placed the wipes into the interior pockets of his jacket. *Id.*, ¶ 16.  Plaintiff initially did not respond to defendant and asked if defendant was a "receipt Nazi."  *Id.*, ¶ 15.  Plaintiff asked if he was being detained and defendant responded in the affirmative.  Docket No. 91 at 5, ¶ 5; Docket No. 94 at 5, ¶ 18. Defendant called for backup over the police radio, requesting a "cover car."  Docket No. 94 at 5, ¶ 19.  Plaintiff and defendant returned to the store vestibule where two Walmart loss prevention employees joined them.  *Id.* at 6, ¶ 21.  Defendant briefly patted down plaintiff and asked plaintiff if he had stolen the items that defendant felt in plaintiff's outer jacket pockets.  *Id.*, ¶ 24.  Plaintiff did not respond.  *Id.*

At 9:13 p.m., Aurora Police Officers Luke Ingersoll and Drew Limbaugh entered Walmart and approached plaintiff, defendant, and a store associate.  *Id.*, ¶ 25.

2

Defendant took the wipes from the interior pocket of plaintiff's jacket, telling plaintiff that he did not believe they belonged to plaintiff. *Id.* at 6-7, ¶ 28. Defendant asked Officers Ingersoll and Limbaugh if they could have plaintiff sit down while they figured out what the store wanted to do. *Id.* at 7, ¶ 31. Officer Limbaugh agreed and asked plaintiff to step outside. *Id.* Officers Limbaugh and Ingersoll took hold of plaintiff's arms and led him outside. *Id.*, ¶ 32. Officer Ingersoll told plaintiff to sit down with his legs crossed at the ankles and plaintiff complied. *Id.*

Officer Limbaugh told plaintiff that he needed to pat him down for weapons and plaintiff said that defendant had already patted him down. *Id.*, ¶ 33. Officer Limbaugh disagreed and proceeded to search plaintiff. *Id.* During the search, RV lights were clearly visible in plaintiff's open outer jacket pocket and Officer Limbaugh asked, "[i]s that another stolen item in your pocket?" *Id.*, ¶ 34. Officer Limbaugh briefly lifted the RV lights out of plaintiff's pocket, identified the packaging, and placed it back in plaintiff's pocket. *Id.*

Defendant returned and said to plaintiff, "I'm going to scratch you a ticket for theft, based on my observations of you selecting items and walking out of the store. I'm gonna back that up with a ton of video; they got really good video here. So I'm gonna back that up, so there's gonna be, it's gonna be crystal clear, no doubt in my mind, what occurred tonight, okay?" *See* Docket No. 94 at 8, ¶ 36; Docket No. 99 at 3, ¶ 36; Docket No. 102 at 1, ¶ 36.[2] Officer Ingersoll asked plaintiff about the merchandise in

---

[2] The parties dispute whether defendant's words to plaintiff upon his return indicated that defendant's investigation into the wipes packages had concluded. *See* Docket No. 94 at 8, ¶ 36; Docket No. 99 at 3, ¶ 36. However, the parties do not dispute what defendant said to plaintiff upon his return. *See* Docket No. 99 at 3, ¶ 36; Docket No. 102 at 1, ¶ 36 ("Disputed that Defendant statements had indicated that Defendant's

plaintiff's front pocket.  Docket No. 94 at 8, ¶ 37.  Officer Ingersoll retrieved the RV lights

from plaintiff's front pocket and handed it to defendant.  *Id*.  Defendant questioned

whether the item was from Walmart and offered to return it if plaintiff could prove his

ownership.  *Id.*  Plaintiff declined to speak, and defendant said he would keep the item

and return it to Walmart if it was confirmed to be their property.  *Id.*  Defendant showed

the RV lights to a store associate.  *Id.*

Defendant and Officer Limbaugh returned to Officers Limbaugh and Ingersoll's

patrol vehicle to fill out paperwork.  *Id.*, ¶ 38.  Officer Limbaugh began to write a

trespass notice on the hood of the vehicle and then approached defendant.  *Id.*

Defendant explained to Officer Limbaugh that he had started to draft a traffic ticket

before switching to the correct summons form.  *Id.*  While defendant and Officer

Limbaugh were filling out paperwork, a Walmart store associate approached plaintiff

and asked if he remembered which register he had used to check out.  *Id.* at 8-9, ¶ 39.

Plaintiff responded, "I learned that my mouth just gets me in trouble."  *Id.*  Plaintiff asked

the store associate if defendant was still near his vehicle.  *Id.* at 9, ¶ 40.  The store

associated confirmed that defendant was still nearby and asked plaintiff to give it some

time.  *Id.*  Officer Ingersoll told plaintiff that defendant was filling out paperwork.  *Id.*

Defendant and Officer Limbaugh rejoined plaintiff and Officer Ingersoll.  *Id.*, ¶ 41.

Defendant issued plaintiff the summons and confirmed plaintiff's contact information.

*Id.*, ¶ 44.  Defendant told plaintiff that the case could be dismissed and that defendant

would contact plaintiff if further investigation revealed exculpatory evidence.  *Id.*  On

---

investigation into the wipes package was concluded.  Undisputed that Agent Lore said
the statements in Plaintiff's paragraph.").

September 17, 2019, Walmart contacted defendant and told him that footage had been located showing that plaintiff paid for the merchandise. *Id.* at 10, ¶ 48. Defendant informed plaintiff that the summons had been dismissed, plaintiff no longer needed to appear in court, and that plaintiff could retrieve his items. *Id.*; Docket No. 91 at 8, ¶ 14.

## II. LEGAL STANDARDS

### A. Objections to the Magistrate Judge Recommendation

The Court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). An objection is "proper" if it is both timely and specific. *United States v. One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996) ("*One Parcel*"). A specific objection "enables the district judge to focus attention on those issues – factual and legal – that are at the heart of the parties' dispute." *Id*.

In the absence of an objection, the district court may review a magistrate judge's recommendation under any standard it deems appropriate. *See Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991); *see also Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."). The Court therefore reviews the non-objected to portions of a recommendation to confirm there is "no clear error on the face of the record." Fed. R. Civ. P. 72(b), Advisory Committee Notes. This standard of review is something less than a "clearly erroneous" or "contrary to law" standard of review, Fed. R. Civ. P. 72(a), which in turn is less than a de novo review. Fed. R. Civ. P. 72(b). Because plaintiff is

proceeding pro se, the Court will construe his objection and pleadings liberally without serving as his advocate.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

### B. <u>Motion for Summary Judgment</u>

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).  A movant who bears the burden at trial must submit evidence to establish the essential elements of its claim.  *Harper v. Mancos Sch. Dist. RE-6*, 837 F. Supp. 2d 1211, 1217 (D. Colo. 2011).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."  *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994).  The

nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115.

When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.* Cross-motions for summary judgment must be viewed separately, and the denial of one does not necessitate the granting of the other. *United States v. Supreme Court of N.M.*, 839 F.3d 888, 906-07 (10th Cir. 2016) (citations omitted).

### C. **Qualified Immunity**

"Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A court should resolve questions of qualified immunity at the earliest possible stage of litigation. *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987).

To overcome a qualified immunity defense at the summary judgment stage, a plaintiff must demonstrate (1) that the official violated a statutory or constitutional right,

and (2) that the right was "clearly established" at the time of the challenged conduct.
*Surat v. Klamser*, 52 F.4th 1261, 1270-71 (10th Cir. 2022).  Courts are "permitted to
exercise their sound discretion in deciding which of the two prongs of the qualified
immunity analysis should be addressed first in light of the circumstances in the
particular case." *Pearson*, 555 U.S. at 236.  Generally, a constitutional right is clearly
established if "the contours of the right [are] sufficiently clear that a reasonable official
would understand that what he is doing violates that right." *Surat*, 52 F.4th at 1276.
"Ordinarily, in order for the law to be clearly established, there must be a Supreme
Court or Tenth Circuit decision on point, or the clearly established weight of authority
from other courts must have found the law to be as the plaintiff maintains." *Torres v.
Madrid*, 60 F.4th 596, 603 (10th Cir. 2023); *see also Irizarry v. Yehia*, 38 F.4th 1282,
1293 (10th Cir. 2022).  The relevant precedent is "considered on point if it involves
*materially similar conduct* or applies with *obvious clarit*y to the conduct at issue."
*Irizarry*, 38 F.4th at 1294; *see also Shepherd v. Robbins*, 55 F.4th 810, 815 (10th Cir.
2022).  "To be clear, we do not require plaintiffs to engage in a scavenger hunt for a
prior case with identical facts.  We ask whether the existing law provides fair warning to
a defendant." *Shepherd*, 55 F.4th at 815 (citations omitted).

## III.    ANALYSIS

On March 9, 2023, the Court dismissed plaintiff's claims that alleged, pursuant to
42 U.S.C. § 1983, an (1) unreasonable "relocation of person," (2) unreasonable search,
and (3) unreasonable seizure of the wipe packages.  *See* Docket No.  37 at 3, 17.  The
Court did not dismiss plaintiff's claims for unreasonable seizure of the RV lights and
unreasonable detention after seizing the RV lights.  *See id.* at 3, 17.  On April 5, 2024,

plaintiff filed his amended complaint that brings claims for (1) unreasonable search, (2) unreasonable seizure, and (3) unreasonable detention.  *See* Docket No. 61 at 10-15. On February 4, 2025, the Court dismissed plaintiff's unreasonable search and seizure claims.  *See* Docket No. 84 at 17.  The Court did not dismiss plaintiff's unreasonable detention claim to investigate the RV lights, finding that the complaint plausibly alleged that defendant violated plaintiff's clearly established right by detaining plaintiff without reasonable suspicion that the RV lights were stolen.  *See id.* at 12-16.  Thus, the sole remaining clam in this case is plaintiff's claim that he was unreasonably detained in violation of the Fourth Amendment when defendant prolonged plaintiff's detention to investigate the RV lights.  *See* Docket No. 61 at 14-15, ¶¶ 30-33.

The magistrate judge recommends that defendant's motion for summary judgment on plaintiff's unreasonable detention claim be granted and that plaintiff's motion for summary judgment be denied.  Docket No. 104 at 10.  The recommendation finds that defendant was pursuing the initial purpose of plaintiff's detention, which was to investigate whether the wipes were stolen, for the duration of plaintiff's detention, *id.* at 7-8; that the investigation into the wipes was not completed until defendant handed plaintiff the summons, *id.* at 7; and that plaintiff's argument that defendant "purposefully delayed in issuing him a summons so that a secondary investigation could be completed" lacks support from the evidence.  *See id.* at 8.  The recommendation rejects plaintiff's argument that the investigation into the RV lights was a "new investigation separate from the one into the wipes" because the "inquiry is not whether a new investigation took place alongside the original one," but rather "whether activities unrelated to the original purpose of the stop prolonged the stop."  *Id.*  Finally, the

recommendation finds that the Court's previous finding at the motion to dismiss stage –
that defendant lacked reasonable suspicion to believe the RV lights were stolen and
thus could not justify prolonging the detention on that basis – does not affect the
outcome at the motion for summary judgment stage.  *See id.* at 9.  The
recommendation finds that, at the summary judgment stage, the undisputed facts
"shows that the issues with the RV lights took place during a time still needed so the
defendant could issue the plaintiff a summons for the alleged theft of the wipes."  *Id.*

In his objection, plaintiff first argues that the recommendation improperly
concludes that the initial purpose of the detention, to investigate the wipes, did not
conclude until defendant issued plaintiff the summons.  *See* Docket No. 108 at 4.
Plaintiff contends that the purpose of the detention was fulfilled the moment defendant
told plaintiff that he was going to "scratch" plaintiff a "ticket for theft."  *Id.*  Plaintiff argues
that defendant, following this comment, engaged in actions that were in furtherance of
investigating the RV lights, which unconstitutionally prolonged plaintiff's detention.  *See
id.* at 4-9.  Plaintiff states that the recommendation improperly credited defendant's
explanation that his writing the citation was prolonged by defendant's use of the
incorrect form, as opposed to this process being prolonged by activities related to the
RV lights.  *See id.*

Second, plaintiff argues that the recommendation misapplies *Rodriguez v. United
States*, 575 U.S. 348, 354 (2015); *Illinois v. Caballes*, 543 U.S. 405, 407 (2005); and
*Florida v. Royer*, 460 U.S. 491, 500 (1983), on the issue of prolonging a detention.  *See
id.* at 9-11.  Plaintiff contends that the "fact that Defendant still had to physically fill out a
summons form does not give him license . . . to pause that ministerial task and keep

10

Plaintiff detained while he explores new, unsubstantiated suspicion about different merchandise." *Id* at 11.

Third, plaintiff argues that the recommendation "fails to account for the law-of-the-case mandate doctrine arising from the Tenth Circuit's *Montgomery* decision and this Court's prior Order denying in part Defendant's MTD Plaintiff's Amended Complaint." *Id.* Plaintiff contends that "[n]othing in the summary judgment record materially changes the core structure of the encounter that the Tenth Circuit and this Court already analyzed." *Id.* at 12.

A. **Defendant's Motion for Summary Judgment**

The Fourth Amendment provides the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. A "seizure" of one's person occurs when a government actor terminates one's freedom of movement through intentional means. *See Brower v. Cnty. of Inyo*, 489 U.S. 593, 596-97 (1989); *Scott*, 550 U.S. at 381. The Supreme Court has identified three types of police encounters with citizens: consensual encounters, investigative detentions, and arrests. *Cortez v. McCauley*, 478 F.3d 1108, 1115 (10th Cir. 2007) (en banc). Investigative detentions and arrests are "seizures" within the meaning of the Fourth Amendment. *Id.*

"An investigative detention, also called a *Terry* stop, is an encounter in which police may 'stop and briefly detain a person for investigative purposes.'" *Morris v. Noe*, 672 F.3d 1185, 1191 (10th Cir. 2012) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). An investigative detention is justified "if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer

11

lacks probable cause." *Id.* at 1191-92 (quoting *Sokolow*, 490 U.S. at 7). The officer "must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000). Reasonable suspicion requires more than a "hunch," but is "considerably less than proof by a preponderance of the evidence or that required for probable cause." *United States v. Chavez*, 660 F.3d 1215, 1221 (10th Cir. 2011). Reasonable suspicion is based on the "totality of the circumstances." *Id.* at 1222.

To determine whether an investigative detention is reasonable, the court must first "assess whether the detention was justified at its inception."[3] *Lundstrom v. Romero*, 616 F.3d 1108, 1120 (10th Cir. 2010). Second, the court must "evaluate whether the officer's actions were reasonably related in scope to the circumstances that first justified the interference." *Id.* (internal quotation and citation omitted). "The allowable scope of an investigative detention cannot be determined by reference to a bright-line rule; common sense and ordinary human experience must govern over rigid criteria." *United States v. Neff*, 300 F.3d 1217, 1220 (10th Cir. 2002) (internal quotation and citation omitted). "[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Royer*, 460 U.S. at 500. While "[a]n officer may conduct certain unrelated inquiries during the stop, . . . he may not do so in a way that prolongs it absent the reasonable suspicion ordinarily required to detain an individual." *United States v. Frazier*, 30 F.4th 1165, 1173 (10th Cir. 2022).

---

[3] Plaintiff does not dispute that his initial detention for investigation into the wipes was justified at its inception. *See* Docket No. 99 at 6-10.

12

As an initial matter, the Court agrees with recommendation that the time it took for defendant to write the citation for theft of the wipes was within the scope of the initial justification for the stop. *See Montgomery v. Brukbacher*, No. 20-cv-03231-GPG, 2021 WL 837290, at *3 (D. Colo. Jan. 29, 2021), *aff'd*, 2021 WL 4074358 (10th Cir. Sept. 8, 2021) ("the seizure consisted of the Defendant asking Plaintiff for his identification and writing out a citation and summons, which is consistent with a *Terry* stop").

The next issue is whether defendant shifted his attention to the RV lights and therefore prolonged plaintiff's detention. It is undisputed that, after defendant told plaintiff he was going to write the citation for theft of the wipes, Officer Ingersoll asked plaintiff about the RV lights in plaintiff's outer jacket pocket, retrieved the RV lights from plaintiff's pocket, and handed the RV lights to defendant. Docket No. 94 at 8, ¶ 37. Defendant then proceeded to question plaintiff about the RV lights and whether plaintiff also took the RV lights from Walmart. *Id.* Plaintiff declined to speak, defendant said he would keep the item and return it to Walmart if it was confirmed to be their property, and defendant showed the RV lights to the Walmart associate. *Id.* This interaction regarding the RV lights lasted approximately two minutes. *Id.* Defendant then proceeded to go to his car and write the citation for theft of the wipes. *Id.*, ¶ 38.[4]

----

[4] In his objection, plaintiff contends that there are additional instances in which defendant prolonged his detention to investigate the RV lights beyond their two-minute conversation. From 9:34 p.m. to 9:36 p.m., plaintiff contends that the Walmart associate had a discussion with defendant regarding the RV lights after defendant had returned to his vehicle to complete the citation paperwork. *See* Docket No. 108 at 7-8. Plaintiff contends that the Walmart associate and defendant had another discussion regarding the RV lights from 9:38 p.m. to 9:40 p.m. *See id.* at 8. The Court will not consider these facts because plaintiff did not assert them as undisputed facts in either his motion for summary judgment or response to defendant's motion for summary judgment. *See* Docket No. 91 at 4-8, ¶¶ 1-15; Docket No. 99 at 4-5, ¶¶ 49-53. While plaintiff asserts that defendant "extended Plaintiff's detention for an additional 15

13

Investigating whether the RV lights were stolen was unrelated to the initial purpose of the stop, namely, to investigate whether the wipes were stolen. *See Montgomery v. Lore,* 2023 WL 8613523, at *5 (10th Cir. Dec. 13, 2023) (holding that plaintiff plausibly alleged that defendant unlawfully prolonged plaintiff's detention by investigating the RV lights because, in doing so, defendant extended the detention "beyond the time needed to investigate the alleged shoplifting of the wipes"); *United States v. Griffin*, 696 F.3d 1354, 1360 (11th Cir. 2012) (holding that police officer's questions regarding what suspect had in his pocket was unrelated to the purpose of the initial detention, which concerned attempted theft and a frisk for weapons). Although defendant's investigation into the wipes had not yet concluded – in part because the citation had not been written – "an officer can prolong a stop before or after completing the investigation." *See United States v. Campbell*, 26 F.4th 860, 884 (11th Cir. 2022). The "critical question" is not whether the unrelated inquiry occurred before or after the officer issued the citation, but whether the unrelated inquiry "prolongs – *i.e.,* adds time to – the stop." *Rodriguez*, 575 U.S. at 357 (internal quotations and citation omitted). Here, defendant's inquiry into the RV lights added at least two minutes to plaintiff's detention. Defendant argues that any delay plaintiff experienced due to the RV lights investigation was de minimis. *See* Docket No. 100 at 7. However, the Tenth Circuit held that "[e]ven *de minimis* delays caused by unrelated inquiries violate the Fourth Amendment in the absence of reasonable suspicion." *See Frazier*, 30 F.4th at 1173.

---

minutes to investigate into [the RV lights'] potentially stolen nature" which "delayed the time it would have taken Defendant to issue Plaintiff a citation for stealing the wipes packages," the Court does not consider this fact because plaintiff cites no evidence in support. *See* Docket No. 99 at 5, ¶ 53.

And "each minute" that defendant spent investigating the RV lights "was time the citation-related tasks went unaddressed." *See id.* Accordingly, the Court finds that, absent reasonable suspicion that the RV lights were stolen, defendant unlawfully prolonged plaintiff's detention in violation of the Fourth Amendment.

The Court turns to whether defendant had reasonable suspicion that the RV lights were stolen. Defendant asserts that he had reasonable suspicion based on the collective information that was possessed by defendant and Officer Ingersoll. *See* Docket No. 94 at 14-17. Defendant argues that observing plaintiff "leaving the store twice with unbagged items in his hands, watching him place the wipes in his jacket pockets, feeling the RV lights in his jacket pockets during his pat-down search and questioning Plaintiff if they were also stolen, combined with the information the other officers provided him, amounted to reasonable suspicion for extending the investigation into the RV lights." *Id.* at 15. Defendant claims that Officer Ingersoll shared information with defendant by asking plaintiff "if the RV lights are more 'merchandise from the store'" in defendant's presence, retrieving the RV lights from plaintiff's pocket, and handing them to defendant. *See id.* Defendant further cites plaintiff's refusal to cooperate as a basis for defendant having reasonable suspicion. *See id.* at 16.

When determining the existence of facts that support reasonable suspicion, courts may consider information supplied by a third-party as well as that supplied by the officer's personal observations. *United States v. McHugh*, 639 F.3d 1250, 1257–58 (10th Cir. 2011); *Adams v. Williams*, 407 U.S. 143, 147-49 (1972). If the third-party information was supplied by another law enforcement officer, "knowledge and

15

reasonable suspicions of one officer can be imputed to another." *United States v. Whitley*, 680 F.3d 1227, 1234 (10th Cir. 2012).  As is relevant here,

> Under the horizontal collective knowledge doctrine, a number of individual officers have pieces of the probable cause or reasonable suspicion puzzle, but no single officer has sufficient information to satisfy the necessary standard. The inquiry in such a circumstance is whether the individual officers have communicated the information they possess individually, thereby pooling their collective knowledge to satisfy the relevant standard.

*Id.* at 1234 n.3 (internal quotation and citation omitted).  Under the horizontal collective knowledge doctrine, "courts may consider whether officers who are acting together *collectively* possess sufficient information to support probable cause, *provided that they have actually communicated the information to each other*."  *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 881 (10th Cir. 2014) (emphasis added).

As the Court found in its February 4, 2025 Order, Officer Ingersoll merely asking plaintiff, in the presence of defendant, whether the merchandise in plaintiff's pocket was stolen does not establish reasonable suspicion because Office Ingersoll did not communicate any information that supported his reasonable suspicion that the RV lights were stolen.  *See* Docket No. 84 at 14.  Furthermore, the RV lights being in plaintiff's jacket, the same jacket where defendant saw plaintiff put the wipes, does not support reasonable suspicion.  As the Court previously held, "[r]egardless of the significance, if any, of the wipe packages and the RV lights being in different locations in plaintiff's jacket, the unopened RV lights being retrieved from the same jacket that contained the wipe packages does not change the fact that defendant did not have specific and articulable facts which, taken together with rational inferences from those facts, reasonably warranting plaintiff's investigatory detention regarding theft of the RV lights." *See id.* (internal quotation and citation omitted).

16

Defendant seeing plaintiff walk out with unbagged wipes past the checkout counters while glancing nervously over his shoulder supports reasonable suspicion to believe the wipes were stolen.  Yet, this does not provide reasonable suspicion to believe that the RV lights – which were on plaintiff's person until Officer Ingersoll removed them – were stolen.  Defendant's argument that him having "probable cause to investigate Mongtomery for shoplifting the wipes" extends "to the RV lights under the totality of the circumstances" is unavailing.  *See* Docket No. 94 at 16.  In order to have reasonable suspicion to prolong plaintiff's detention, defendant must provide specific, articulable facts that support his reasonable suspicion that the RV lights, rather than the wipes, were stolen.  *See Bustillos v. City of Artesia*, 98 F.4th 1022, 1028–29 (10th Cir. 2024) (rejecting defendant's argument that "the Fourth Amendment's general mandate to consider the totality of the circumstances gave [defendant] reasonable suspicion simply because, according to him, [plaintiff] seemed suspicious").  "[R]easonable suspicion squarely demands something more than an inchoate and unparticularized suspicion or hunch."  *See id.* at 1028 (internal citation and quotation omitted).  Accordingly, the Court finds that plaintiff has shown a violation of his Fourth Amendment rights based on defendant prolonging plaintiff's detention without reasonable suspicion.

The Court also finds that it was clearly established that defendant violated plaintiff's Fourth Amendment rights by prolonging his detention to investigate the RV lights.  As the Tenth Circuit has held in this case, "the Supreme Court long has recognized that an officer may not extend an investigative detention beyond the time needed for the purpose of the stop."  *Lore*, 2023 WL 8613523, at *6 (citing *Rodriguez*, 575 U.S. at 357; *Caballes*, 543 U.S. at 407; *Royer*, 460 U.S. at 500).  Furthermore, it

17

was clearly established that the investigative detention could not be prolonged on the basis of unrelated inquiries absent reasonable suspicion.  *See Rodriguez,* 575 U.S. at 355.

Defendant argues that he is entitled to qualified immunity because he "reasonably relied" on information from Officer Ingersoll, referring to the "fellow officer rule."  *See* Docket No. 94 at 14.  A "police officer who acts in reliance on what proves to be the flawed conclusions of a fellow police officer may nonetheless be entitled to qualified immunity as long as the officer's reliance was objectively reasonable." *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1260 (10th Cir. 1998) (internal quotations and citation omitted); *see also United States v. Matthews,* 458 F. App'x 717, 721 (10th Cir. 2012) (unpublished) (applying fellow officer rule to determine whether defendant had responsible suspicion).  To the extent that Officer Ingersoll asking whether the merchandise in plaintiff's pocket was stolen, taking the RV lights out of plaintiff's pocket, and handing them to defendant can be considered a conclusion of reasonable suspicion, the Court finds that defendant is not entitled to qualified immunity on this basis.  Officer Ingersoll did not relay any information that supported his reasonable suspicion that the RV lights were stolen.  Thus, the fellow officer rule does not shield defendant from liability.  *See Fogarty v. Gallegos*, 523 F.3d 1147, 1157 n.10 (10th Cir. 2008) (holding that the court had no occasion to apply the fellow officer rule because "no officer has admitted relaying information to, or receiving information from, fellow officers" based on "personal observations" of plaintiff's behavior that could support probable cause).  Moreover, there is no evidence, and defendant does not argue, that Officer Ingersoll himself had reasonable suspicion.

18

Accordingly, the Court will sustain plaintiff's objection and deny defendant's motion for summary judgment.

### B. Plaintiff's Motion for Summary Judgment

Plaintiff moves for summary judgment on his Fourth Amendment unreasonable detention claim on the issue of liability, requesting the Court "leave for the jury to decide the sole remaining issue of the amount of damages that he should be awarded." Docket No. 91 at 15. As discussed above, a plaintiff's Fourth Amendment right to be free from unreasonable detention is violated where an investigative detention, although justified at its inception, exceeds the scope of the circumstances that justified the initial purpose of the detention. *See Lundstrom*, 616 F.3d at 1120. If the investigative detention exceeds the scope of the detention's initial purpose, a plaintiff may not be detained absent reasonable suspicion. *See Frazier*, 30 F.4th at 1173.

Plaintiff's initial detention was justified by defendant's reasonable suspicion that the wipes were stolen. However, it is undisputed that, during the detention, defendant investigated the RV lights by questioning plaintiff about whether they were stolen. *See* Docket No. 94 at 8, ¶ 37. Because investigating whether the RV lights were stolen was unrelated to the initial purpose for the stop, defendant required reasonable suspicion to detain plaintiff for the purpose of questioning him regarding the RV lights.

The Court finds that, on the undisputed facts, defendant did not have reasonable suspicion that plaintiff stole the RV lights. Defendant did not see plaintiff walk out with the RV lights, only the unbagged wipes. *See id.* at 5, ¶¶ 12-16. The mere fact that defendant saw plaintiff place the wipes into the same jacket where the RV lights were located does not supply reasonable suspicion. *See id.*, ¶ 16. While defendant patted

plaintiff down and asked whether the then-unidentified items in plaintiff's outer jacket pocket were stolen, there are no facts supporting reasonable suspicion that the items were stolen. *See id.* at 6, ¶ 24. The only time that defendant saw the RV lights was when Officer Ingersoll took them out of plaintiff's pocket, handed them to defendant, and Officer Ingersoll asked plaintiff whether the RV lights were stolen. *See id.* at 8, ¶ 37. However, Officer Ingersoll merely asking whether the RV lights were stolen in defendant's presence does not supply reasonable suspicion for defendant. *See Malcom*, 755 F.3d at 881. Furthermore, defendant refusing to answer questions about the RV lights does not supply reasonable suspicion. *See* Docket No. 94 at 8, ¶ 37; *Royer*, 460 U.S. at 498 (holding that defendant's "refusal to listen or answer does not, without more, furnish those grounds" for reasonable suspicion).

Defendant is not entitled to qualified immunity because it was clearly established that an officer may not prolong an investigative detention beyond the time needed to complete the purpose of the stop "absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *See Rodriguez*, 575 U.S. at 354-55.

Accordingly, the Court will grant summary judgment for plaintiff on his Fourth Amendment unreasonable detention claim on the issue of liability.

## IV.   CONCLUSION

Therefore, it is

**ORDERED** that the Recommendation of United States Magistrate Judge [Docket No. 104] is **REJECTED**. It is further

**ORDERED** that Plaintiff's Objection to the Magistrate Judge's Report and Recommendation [Docket No. 108] is **SUSTAINED**. It is further

20

ORDERED that Plaintiff's Motion for Summary Judgment [Docket No. 91] is

**GRANTED**.  It is further

ORDERED that Defendant's Motion for Summary Judgment [Docket No. 94] is

**DENIED**.  It is further

ORDERED that the parties shall contact Chambers via email

(Brimmer_Chambers@cod.uscourts.gov) no later than **April 8, 2026** to schedule the

trial preparation conference and jury trial.

DATED March 30, 2026.

BY THE COURT:

PHILIP A. BRIMMER
United States District Judge